23-MJ-8179-PGL

# AFFIDAVIT OF SPECIAL AGENT STEPHEN PEREIRA IN SUPPORT OF A CRIMINAL COMPLAINT

I, Special Agent Stephen Pereira, being sworn, state as follows:

## INTRODUCTION

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"). I was appointed to the FBI in February 2009. As such, I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code: that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516, Title 18, United States Code.

2. I am currently assigned as a Special Agent to the FBI Metro Boston Gang Task Force ("MBGTF"). My duties include working as a liaison between federal, state, and local law enforcement entities in the investigation of illegal distribution of narcotics, firearm offenses, and associated gang-related violent crimes. While participating in investigations of drug distribution/trafficking, I have conducted or participated in surveillance, the purchase of illegal drugs and firearms, the execution of search warrants, debriefings of subjects, witnesses, and informants and reviews of consensually recorded conversations and meetings. Through my training, education, and experience, I have become familiar with the manner in which drug traffickers conduct their illegal drug trafficking activity, to include their use of cellular telephones to contact drug customers, drug runners, drug associates, and sources of illegal drug supply. I am familiar with narcotics traffickers' methods of operation, including distribution, storage, and transportation of narcotics.

3. Prior to my current assignment, I was assigned to the Strategic Information and Operations Center as a Supervisor Special Agent in the Critical Incident Response Group Division

at FBI Headquarters in Washington, D.C.  Prior to that assignment, I was a Special Agent assigned to FBI New York Field Office where I conducted investigations in the Counterintelligence Division and was a member of the FBI New York SWAT Team.

4. Based on my training and experience as a Special Agent, I am familiar with federal narcotics laws. I know that it is a violation of Title 21 U.S.C. § 841(a)(1), for any person to knowingly or intentionally manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.  I submit this affidavit in support of a Criminal Complaint charging Zakar BELL ("BELL"), a/k/a "ZAY," born 2002, with violating 21 U.S.C. § 841(a)(1) (possessing with intent to distribute, and distributing, fentanyl).

5. I am familiar with the facts and circumstances of this investigation from my own personal participation and from oral and written reports made to me by agents of the FBI and other federal, state and local law enforcement agencies.  I submit this affidavit for the limited purpose of establishing probable cause to believe BELL has committed the above offense.  Accordingly, I have not included each and every fact known to me and other law enforcement officers involved in this investigation. I have set forth only the facts that I believe are needed to establish the requisite probable cause.

## PROBABLE CAUSE

6. The FBI and the Boston Police Department ("BPD") are involved in an ongoing investigation of BELL.  Pursuant to the investigation, law enforcement officers have determined that BELL is selling fentanyl in the Boston area. As part of the investigation, BELL has sold controlled substances, particularly fentanyl, to an FBI Undercover Employee ("UCE-1").[1]

---

[1] UCE-1 is a certified Federal Bureau of Investigation employee. UCE-1's identity is known to law enforcement officials.

7. On December 1, 2022, UCE-1 communicated with an associate of BELL through a series of text messages on WHATSAPP, and BELL's associate agreed to sell a quarter "key" of fentanyl for $8,750 to UCE-1. Based on my training and experience, the term "key" is common drug jargon for a kilogram. Thus, BELL's associate agreed to sell 250 grams of fentanyl to UCE-1. During these initial communications, they agreed that BELL would meet UCE-1 at a predetermined location to consummate the deal.

8. Following the series of communications between BELL's associate and UCE-1, law enforcement officers searched UCE-1 for contraband and money with negative results. Investigators provided UCE-1 with $9,000 of official agency funds ("OAF") to complete the drug purchase and an audio/video recording device and a transmitter, which recorded the controlled purchase. Investigators subsequently surveilled UCE-1 to the pre-arranged meeting location in Boston, MA.

9. A short time later, BELL (using a phone subscribed to his girlfriend) contacted UCE-1 telephonically and advised that BELL had arrived at the pre-arranged location. Investigators observed UCE-1 enter BELL's vehicle, a heavily tinted, grey Toyota Corolla. Based on a review of public records, the vehicle belongs to BELL's girlfriend, and BELL has been encountered by law enforcement officers in the Corolla in April 2023. UCE-1 informed investigators that UCE-1 entered the Corolla and engaged in a brief conversation with BELL. BELL was the passenger and a female consistent with BELL's girlfriend was the driver. During their conversation, BELL told UCE-1 to look in a shoe box located behind the driver's seat. UCE-1 opened the box which contained a clear plastic bag containing an off-white rock like substance. UCE-1 provided BELL the $8,750 and an additional $250 of OAF in exchange for the 250 grams of suspected fentanyl. UCE-1 identified BELL as the person from whom he purchased the

substance. The information from UCE-1 was consistent with communications and recordings of the deal.

10. After UCE-1 left the vicinity of the drug purchase, investigators surveilled UCE-1 to a predetermined location and UCE-1 provided investigators with a clear plastic bag containing an off-white rock like substance. Law enforcement officers then searched UCE-1 for money and contraband with negative results. The clear bag contained approximately 251.1 grams of an off-white rock like substance, which was consistent with the agreed-upon fentanyl transaction. The substance field tested positive for the presumptive presence of fentanyl.

## CONCLUSION

11. Based on the foregoing, there is probable cause to believe that on or about December 1, 2022, in Boston, in the District of Massachusetts, BELL did knowingly and intentionally possess with intent to distribute, and distribute, fentanyl, in violation of Title 21, United States Code, Section 841(a)(1).

I declare the foregoing is true and correct.

                                           *Stephen Pereira /by Paul G. Levenson*
                                           Stephen Pereira
                                           Special Agent, FBI

The affiant appeared before me on this date, by telephonic conference or other reliable electronic means, pursuant to Fed. R. Crim. P. 4.1 and affirmed under oath the content of this affidavit and application.

Subscribed and sworn to on this 12th day of May, 2023.

_____
HONORABLE PAUL G. LEVENSON
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS